UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| LISA FULLER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 07-138-ART |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | **MEMORANDUM OPINION** |
| COMPANY OF PITTSBURGH, PA, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Lisa Fuller brings this action pursuant to the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, against National Union Fire Insurance Company of Pittsburgh, PA ("National Union" or "Defendant"). She seeks to recover life insurance benefits as a result of the death of her twenty-one-year-old son, Joshua Baldridge, under the Group Accident Insurance Policy (the "Policy"), which National Union issued to Ms. Fuller's employer, FedEx Corporation. National Union denied life insurance benefits to her on the basis that Joshua was not a full-time student at the time of his death, as is required for the Policy to cover a dependent child between the ages of nineteen and twenty-three.

Presently pending before the Court is Plaintiff's Motion to Vacate Administrative Decision and Enter Judgment, R. 14, and the response and reply thereto. R. 16 & 18. The Court held oral argument on May 19, 2008, on Plaintiff's motion. The Court concludes that National Union's denial of life insurance benefits on the basis that Joshua was not a full-time student was

reasonable and rational in light of the Policy's provisions. Accordingly, the Court affirms National Union's administrative decision and will enter judgment in its favor.

I.   **BACKGROUND**

**A. Relevant Policy Provisions**

The Policy included an option to extend life insurance coverage to Ms. Fuller's dependents, which she elected to purchase. Under this option, the Policy provides coverage for "[e]ach unmarried, dependent child . . . under 19 years of age (under 23 years of age if the child is a full time student in an accredited school or college)." Adm. R. 100158. There is no indication in the administrative record that Joshua was married or not a dependent at the time of his death, on April 19, 2005, and the parties confirmed this at the hearing. Further, he turned twenty-one years old on the day he passed away. R. 14, p. 2. As a result, the Policy covers Joshua only if he was a full-time student in an accredited school or college when he passed away. Because the parties do not dispute whether the colleges Joshua had been attending were accredited, *id.*, the key issue is the interpretation of the phrase "full-time student," which is not defined in the Policy.

**B. Joshua's College Attendance**

The administrative record reveals the following. Joshua had not been employed since 2002. Adm. R. 100034. He attended Big Sandy Community & Technical College during the Spring 2003, Fall 2003, and Spring 2004 semesters.[1] *Id.* at 100097. For the Fall 2004 semester,

---

[1] For the 2003 Spring semester, 2003 Fall semester, and 2004 Spring semester, it appears that Joshua was enrolled in 12 hours, 11 hours, and 10 hours, respectively. *Id.* at 100097.

2

Joshua attended Lexington Community College.[2]  *Id.* at 100092.  For the Spring 2005

semester–during which Joshua passed away–the parties dispute his status.  Pointing to a letter

from Big Sandy Community & Technical College stating as such, *id.* at 100024, 100065, Ms.

Fuller argues that Joshua was "registered/enrolled" for 12 hours.  R. 14, p. 3.  Joshua's death in

April apparently led Big Sandy Community & Technical College to "remove[]/delete[]" him

from the Spring 2005 term.  Adm. R. 100024.  As a result of the removal/deletion, the letter from

Big Sandy Community & Technical College stated, "everything is wiped out to reflect nothing

for this semester, like it never existed," and that the college could not "provide documentation

with Joshua's signature or a print out of the classes he enrolled in for Spring 2005."  *Id.*

Apparently based on this fact, National Union argues that no proof was submitted that Joshua

was enrolled as a full-time student beyond December 16, 2004.  R. 16, pp. 2–3; Adm. R. 100027.

Regardless of whether he was enrolled for the Spring 2005 semester, even Ms. Fuller concedes

that Joshua did not attend classes during that semester, R. 14, p. 3, as a result of a tonsillectomy

he had on December 16, 2004.  Adm. R. 100033.  Though Joshua's recovery was expected to

take four to six weeks, he developed an infection that required extended treatment.  *Id.* at

100019.  In a May 4, 2006, letter, Joshua's treating doctor noted that he was unable to attend the

Spring 2005 semester, but planned on returning to school for the Fall 2005 semester.  *Id.* at

100033.

### C.  Procedural History

     After Joshua passed away on April 19, 2005, Ms. Fuller filed a claim on August 7, 2005,

with National Union for life insurance benefits under the Policy.  R. 1 ¶ 8.  On August 25, 2005,

---

[2] For this semester, Joshua was enrolled in 12 hours.  *Id.* at 100092.

3

Defendant denied the claim on the basis that Joshua was not a full-time student at an accredited school or college, as required by the Policy.  Adm. R. 100068–100069.

Ms. Fuller appealed the decision to Defendant's ERISA Appeals Committee.  On February 22, 2006, the committee voted to withhold determination of the claim pending receipt of additional information.  *Id.* at 100041.  The committee sought information regarding any payments Ms. Fuller had made to Big Sandy Community & Technical College for the Spring 2005 semester, a certification of disability from Joshua's physician, and confirmation that he was not working.  *Id.*  Plaintiff provided the committee with her affidavit stating that Joshua had not secured any employment and intended to be a full-time student for the Spring 2005 semester and a May 4, 2006, letter from Joshua's physician stating Joshua was unable to attend the Spring semester because of complications from his tonsillectomy, but that he planned on returning to school for the Fall 2005 semester.  *Id.* at 100031–100034.

On June 21, 2006, the ERISA Appeals Committee upheld the initial denial of Plaintiff's claim on the basis that Joshua was not a full-time student at an accredited school or college.  *Id.* at 100026–100027.  The letter stated, "[t]he Committee reviewed the entire administrative record of this claim and concluded that it contains substantial evidence Joshua Baldridge was not an eligible dependent child as defined by the policy since he was not a full time student in an accredited school or college at the time of his accident."  *Id.* at 100027.  The basis for this conclusion appears to be that Joshua was not enrolled or attending college at the time of his death: "[a]lthough evidence of surgery and post-op medical records were submitted to explain Joshua's failure to return to school, **no proof was submitted that he was enrolled or attending an accredited school or college as a full time student beyond December 16, 2004 through**

4

**the date when the accident occurred.**"  *Id.* (emphasis added).  In other words, National Union appeared to interpret the phrase "full-time student" in the Policy as requiring Joshua to be attending and/or enrolled at the time of his death.

Subsequently, on June 20, 2007, Ms. Fuller filed suit in this Court challenging National Union's denial of her claim for life insurance benefits.  R. 1.

## II.   STANDARD OF REVIEW

The parties do not dispute that ERISA governs this action.  R. 1 ¶ 3; R. 16, p. 3.  In an ERISA-governed benefits action, the Court initially must determine the applicable standard of review–either arbitrary and capricious or *de novo*–based upon the language in the benefit plan. Once it identifies the applicable standard, the Court determines whether National Union's administrative decision should be affirmed under the applicable standard based solely upon the administrative record, absent any procedural challenge by the claimant.  *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998).

### A.  Standard of Review of National Union's Claim Determination

The Court should conduct a *de novo* review of National Union's administrative decision "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Where a plan "expressly grants the administrator discretionary authority to determine eligibility for benefits," the Court shall "review the administrator's decision to deny benefits using the 'highly deferential arbitrary and capricious standard of review.'"  *Killian v. Healthsource Provident Adm'rs Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996)).

5

In the previously entered Scheduling Order, Ms. Fuller agreed that the arbitrary and capricious standard applied.  R. 11, p. 2.  Now, however, Ms. Fuller appears to argue that the Court is entitled to conduct a *de novo* review of National Union's decision.  R. 18, p. 2 ("This Court is entitled to conduct its own *de novo* review of the Plan Administrator's decision.").  Though not stated directly, it appears Ms. Fuller argues for a *de novo* review based on the conflict of interest inherent in National Union's role of insurer and claims administrator.  *Id.*

Leaving aside whether the doctrines of judicial estoppel or law of the case preclude Ms. Fuller from arguing that a *de novo* standard applies, the Court concludes that the language in the Policy grants National Union sufficient discretion to invoke the arbitrary and capricious standard.  "While 'magic words' are unnecessary to vest discretion in the plan administrator and trigger the arbitrary and capricious standard of review, this circuit has consistently required that a plan contain 'a *clear* grant of discretion [to the administrator] to determine benefits or interpret the plan.'"  *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (emphasis and alteration in original) (quoting *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994)).  The Policy here states,

> The plan administrator, and in some cases the plan claims paying administrator, has the authority and discretion to interpret the plan provisions and to determine the eligibility to receive benefits under the plans, as provided under the plan documents.

Adm. R. 100261.

The Sixth Circuit has held that similar plan language requires the arbitrary and capricious standard of review.  *See Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 845–46 (6th Cir. 2000) (holding that language giving the administrator "the discretionary authority to

6

determine eligibility for benefits or to construe the terms of the Plan" triggered the arbitrary and capricious standard); *Bagsby v. Cent. States, Se. Areas Pension Fund*, 162 F.3d 424, 428 (6th Cir. 1998) (holding that language giving the administrator "discretionary and final authority" in deciding benefit claims and construing plan terms triggered the arbitrary and capricious standard); *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997) (holding that language giving the administrator "full discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits" triggered the arbitrary and capricious standard). This language constitutes a clear grant of discretion to National Union to interpret the Policy and determine benefits, and therefore the arbitrary and capricious standard applies.

"[T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). Under an arbitrary and capricious review, the administrator's determination will be upheld if it is rational in light of the plan's provisions. *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456–57 (6th Cir. 2003). Put another way, "[a] decision is not arbitrary and capricious if it is based on a reasonable interpretation of the plan." *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000). Moreover, a reviewing court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). In conducting such a review, the Court will "interpret the Plan's provisions according to their plain meaning, in an ordinary and popular sense." *Perez*, 150 F.3d at 556; *see also Morgan*, 385 F.3d at 992 ("In interpreting a plan, the administrator must adhere to the plain meaning of its language as it would be construed by an ordinary

7

person.").

**B.  National Union's Conflict of Interest**

As stated above, it appears that Ms. Fuller argues for a *de novo* review based on the conflict of interest inherent in National Union's role of insurer and claims administrator.  R. 18, p. 2.  A conflict exists between National Union's fiduciary role as claims administrator and its role as a profit-seeking insurance company.  *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) ("Because an insurance company pays out to beneficiaries from its own assets rather than from the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business, and the conflict of interest is substantial.").  However, the "conflict of interest inherent in self-funded plans does not alter the standard of review, but 'should be taken into account as a factor in determining whether the . . . decision was arbitrary and capricious.'"  *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998) (alteration in original) (quoting *Davis*, 887 F.2d at 694); *see also Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 948 (6th Cir. 2005) ("Though plaintiff argues for application of a 'heightened' review because Hartford both funds and administers this plan, the courts factor an insurer's dual role into its review under the arbitrary and capricious standard, rather than alter that standard.").

The issue becomes what weight the Court should give to this factor.  Ms. Fuller offers no evidence that the conflict of interest affected National Union's decision to deny her benefits; rather, she simply relies on the conflict of interest inherent in National Union's dual role of insurer and claims administrator.  The Court's Scheduling Order gave Ms. Fuller the ability to seek written discovery on National Union's conflict of interest.  R. 11, p. 2.  Ms. Fuller, however,

chose not to avail herself of this opportunity, yet she now argues that the conflict is the "critical issue in this case, sufficient by itself to permit this Court to reverse and vacate the decision of the Plan Administrator."  R. 18, p. 1.  If indeed the conflict of interest was so critical, Ms. Fuller should have sought discovery on the issue so as to aid the Court in determining the weight to be afforded to this factor.  In situations such as this where a plaintiff offers no evidence of the conflict of interest's effect on the decision-making process, courts in the Sixth Circuit give little to no weight to this factor.  *See, e.g.*, *Pflaum v. UNUM Provident Corp.*, No. 04-2411, 2006 WL 678960, at *3 (6th Cir. Mar. 15, 2006) (unpublished) ("Because Pflaum points to nothing beyond the mere existence of a conflict of interest to show that UNUM's decision was motivated by self-interest, we give no further consideration in the arbitrary and capricious analysis to the possibility that the conflict affected UNUM's decision-making."); *Wages v. Sandler O'Neill & Partners, L.P.*, No. 00-5994, 2002 WL 339221, at *3 (6th Cir. Mar. 1, 2002) (unpublished) (stating that the court is required to take a conflict of interest into account "only where there is 'significant evidence' that the insurer was motivated by self-interest") (quoting *Peruzzi*, 137 F.3d at 433); *Cochran v. Trans-Gen. Life Ins. Co.*, Nos. 99-2102, 99-2447, 2001 WL 392050, at *3 (6th Cir. Apr. 13, 2001) (unpublished) ("[M]ere allegations of the existence of a structural conflict of interest are not enough; there must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits."); *Gambrel v. Hartford Life & Accident Ins. Co.*, No. 05-415, 2006 WL 751237, at *4 (E.D. Ky. Mar. 22, 2006) (unpublished) ("While the potential for a conflict of interest is a factor to be considered, but it does not deserve much weight given the lack of any evidence demonstrating impropriety by Hartford or the doctors.").

    The cases cited by Ms. Fuller in support of her conflict-of-interest argument do not

9

require otherwise.  Indeed, *Cooper v. Life Insurance Co.*, 486 F.3d 157, 165 (6th Cir. 2007),

reiterated the rule that a claimant must put forward some evidence that the conflict of interest

affected the claim denial.  The court stated, "[the claimant] provided no evidence whatsoever that

[the administrator's] denial of benefits was motivated by its alleged conflict of interest.  She

simply asserted and continues to assert that because [the administrator] both decides whether an

employee is eligible for disability benefits and then pays those benefits, [the administrator]

necessarily has a conflict."  *Id.*  Given this lack of evidence, the court concluded, "such

conclusory statements, without more, do not suffice to render the district court's determination

[that the claimant was not entitled to judgment on the administrator record] incorrect."  *Id.*

*Bennett v. Kemper National Services, Inc.*, 514 F.3d 547, 552–53 (6th Cir. 2008), simply stated

that courts factor the existence of a conflict of interest into their determination of whether an

administrator's decision was arbitrary and capricious.  The court did not address whether a

conflict of interest existed, *id.*, and so the court had no occasion to address the weight to give to a

conflict of interest when the claimant offers no evidence regarding the conflict.

   In conclusion, in reviewing this matter the Court has paid special attention to the inherent

conflict of interest present here.  It has not found any evidence, nor has Plaintiff pointed to any

evidence, that the conflict somehow obstructed or made National Union's decision arbitrary and

capricious.[3]

---

   [3]  Plaintiff correctly points out that the Supreme Court recently granted certiorari and held oral
argument in *Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660 (6th Cir. 2006), *cert. granted*, 76 U.S.L.W.
3017, --- U.S.---, 128 S. Ct. 1117, 169 L. Ed.2d 845, 2008 WL 161473 (U.S. Jan. 18, 2008) (No. 06-923),
regarding how a plan administrator's conflict of interest should be taken into account in a judicial review
of a benefit determination.  As explained below, the Court concludes that National Union's interpretation
of the phrase full-time student in the context of this case is a reasonable and rational interpretation of the
Policy.  Thus, absent the Supreme Court changing the standard to *de novo*, this Court's result would not

## C.  The Rule of *Contra Proferentem*

Plaintiff notes that National Union drafted the Policy, however, she does not state whether this fact should lead the Court to apply the rule of *contra proferentem* and construe any ambiguities against National Union as the drafter.  R. 14, p. 2.  For its part, National Union's brief indicates that *contra proferentem* should apply, stating that "ambiguous policy terms must be construed strictly in favor of the insured."  R. 16, p. 10.  At the hearing, however, National Union's counsel stated that its brief was incorrect in this regard.  While in certain situations a party's brief could constitute waiver, Ms. Fuller has not raised that here.  In any event, National Union was correct at the hearing–its brief was wrong.  *Contra proferentem* does not apply to interpretation of ERISA plans reviewed under an arbitrary and capricious standard.

In *Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995), the Sixth Circuit held that the arbitrary and capricious standard applied and that, as a result, the court would give the plan administrator discretion in interpreting any ambiguous terms in the plan: "we grant plan administrators who are vested with discretion in determining eligibility for benefits great leeway in interpreting ambiguous terms."  Subsequent cases similarly have rejected the use of *contra proferentem* when reviewing benefit determinations under an arbitrary and capricious review. *See Smiljanich v. Gen. Motors Corp.*, Nos. 05-1225, 05-1226, 2006 WL 1477932, at *5, *5 n.2 (6th Cir. May 25, 2006) (unpublished) (rejecting the use of *contra proferentem* in an arbitrary and capricious review and holding that the administrator had the discretion to resolve a conflict between two provisions in the ERISA plan); *Peach v. Ultramar Diamond Shamrock*, 229 F.

---

differ.  And, since this Court has not performed a *de novo* review, the Court cannot say that even under that standard the outcome would be different.

11

Supp. 2d 759, 766 (E.D. Mich. 2002) ("This Court likewise concludes that *contra proferentem* is not a rule of construction that is applicable to ERISA plans which are reviewed under an arbitrary and capricious standard, as in this case."); *Muse v. Cent. States, Se. & Sw. Areas Health & Welfare & Pension Funds*, 227 F. Supp. 2d 873, 879 (S.D. Ohio 2002) ("Because the Court is applying an arbitrary and capricious standard of review herein, the Court concludes that the *contra proferentum* doctrine does not apply.").  Other courts of appeals have reached the same conclusion as well.  *See Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1100 (10th Cir. 1999) (holding that *contra proferentem* does not apply when the standard of review is arbitrary and capricious); *Morton v. Smith*, 91 F.3d 867, 871 n.1 (7th Cir. 1996) (same); *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 443–44 (2d Cir. 1995) (same); *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 554 (9th Cir. 1995) (same).

In *University Hospitals of Cleveland v. Emerson Electric Co.*, 202 F.3d 839, 846–47 (6th Cir. 2000)–a case using the arbitrary and capricious standard–the Sixth Circuit noted that it would apply the rule of *contra proferentem*.  Subsequent unpublished Sixth Circuit cases have called this contention into question, however.  In *Mitchell v. Dialysis Clinic, Inc.*, No. 00-5467, 2001 WL 1006291, at *3 (6th Cir. Aug. 24, 2001) (unpublished), the court, referencing *University Hospitals*'s use of *contra proferentem*, stated, "[w]e do not believe that through these statements this Circuit has established a rule of interpretation that would completely contradict the deference paid to an administrator's decision."[4]  Similarly, in *Smiljanich*, 2006 WL 1477932, at *5, *5 n.2, the Sixth Circuit relied on *Moos* in granting the plan administrator discretion to

---

[4]   The court, however, did not address the issue of how the arbitrary and capricious standard is affected by *contra proferentem* because it affirmed the district court's judgment in favor of the administrator on an alternative basis.  *Id.* at *4.

resolve a conflict between two provisions in an ERISA plan and declined to follow *University Hospitals*. The *Smiljanich* panel found that granting the administrator discretion to construe ambiguous terms was more consistent with the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), which explained the appropriate standard of review in ERISA benefits cases. *Id.* ("In our view, the rule stated in *Moos*–a decision that preceded *University Hospitals*–is correct in the light of *Firestone Tire & Rubber Co. v. Bruch*."). This Court, therefore, will not use the rule of *contra proferentem* in interpreting any ambiguous terms in the Policy.

### D. Scope of Review

The Court's review of National Union's administrative decision must be based only upon the material in the administrative record, absent a procedural challenge to the administrative decision. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). The Court may consider the parties' arguments concerning the proper analysis of the evidentiary materials in the administrative record, but it may not admit or consider any evidence not presented to the administrator. *Id.*

### III. ANALYSIS

Because Joshua was an unmarried, dependent child who was twenty-one years old at the time of his death, the Policy provides life insurance benefits only if he was a full-time student at an accredited school or college at the time of his death. Adm. R. 100158. The parties do not dispute whether the colleges Joshua had been attending were accredited, R. 14, p. 2, or whether he was an unmarried, dependent when he passed away. As such, the key dispute revolves around whether he was a full-time student at the time of his death.

13

### A.  Interpretation of the Phrase "Full-time Student"

National Union denied Ms. Fuller's claim for life insurance benefits on the basis that Joshua was not a full-time student at the time of his death.  Adm. R. 100027, 100069.  In turn, National Union argues that Joshua was not a full-time student because he did not attend any classes during the Spring 2005 semester, R. 16, pp. 7, 9, a fact that Plaintiff concedes.  R. 14, p. 3.[5]  Cognizant that the Court is reviewing National Union's decision under the arbitrary and capricious standard, the controlling inquiry in this case is whether it was arbitrary and capricious for National Union to conclude that Joshua was not a full-time student at the time of his death. Based on the significant body of case law requiring a student to attend classes to be considered a full-time student, National Union's decision was not arbitrary and capricious because Joshua did not attend any classes during the Spring 2005 semester.

After its initial denial of Ms. Fuller's claim, National Union retained legal counsel to submit a formal coverage opinion.  R. 16, p. 10.  That opinion cited several cases in which the courts held that a student must be attending classes to be considered a full-time student.  Adm. R. 100049–100052.  For example, in *Margie Bridals, Inc. v. Mutual Benefit Life Insurance Co.*, 379 N.E.2d 62, 63 (Ill. App. Ct. 1978) (emphasis added), the group health insurance policy provided coverage to "[e]ach unmarried child of the person insured who has reached his nineteenth birthday but has not reached his twenty-fourth birthday who is a **full-time student in an accredited school**."  The child of an insured obtained a leave of absence and withdrew from classes at Northwestern University because of a medical condition.  *Id.* at 64.  The insurance

---

[5]  There are some statements in the administrative record, however, suggesting that National Union also determined that Joshua was not a full-time student because he was not enrolled.  The Court addresses this issue below.

14

company stopped providing health coverage on the basis that the child was no longer a full-time student. *Id.* at 65. The Illinois Appellate Court held that the child was no longer a full-time student, stating that the term "envisions a person's enrollment in an academic institution and attendance at classes on a substantial basis. . . . Deborah May's withdrawal from classes and leave of absence from the university cannot be considered in keeping with the activities of a 'full-time student.'" *Id.*

Similarly, in *Miller v. Universal Bearings, Inc. Employee Beneficiary Ass'n Plan*, 876 F. Supp. 1038, 1044 (N.D. Ind. 1995), the court upheld the administrator's denial of health insurance benefits on the basis that the employee's child was not a full-time student. Notably, this case arose in the ERISA context and the court undertook a *de novo* review because the plan did not grant the administrator the requisite discretion. *Id.* at 1042. The court stated that full-time is "commonly defined as 'devoting one's full attention and energies to something' and 'the amount of time considered the normal or standard amount for working during a given period.'" *Id.* at 1043 (quoting *Merriam-Webster's Collegiate Dictionary* (10th ed. 1993)). The court also relied on the definition of full-time student developed in the *Margie Bridals* opinion, stating that the term full-time student "'envisions a person's enrollment in an academic institution and attendance at classes on a substantial basis.'" *Id.* (quoting *Margie Bridals, Inc.*, 379 N.E.2d at 65). Because the Fall semester had ended and the plaintiff had not registered for the Spring semester, the court held that she was not a full-time student entitled to coverage for an incident occurring after the Fall semester ended. *Id.*[6] Other decisions likewise have followed *Margie*

---

[6] Earlier in the opinion, the court also noted that the plaintiff was only enrolled for nine hours of classes during the Fall semester, which is below the twelve hours her college required to consider her a full-time student. *Id.* at 1041–42. The court did not appear to rely on this fact in holding that the

*Bridals* in interpreting the phrase full-time student as requiring attendance at classes.  *See Prudential Ins. Co. of America v. Superior Court of Santa Cruz County*, 98 Cal. App. 4th 585, 600 (Cal. Ct. App. 2002) (collecting cases).  National Union's reliance on this case law supports a conclusion that its denial of benefits on the basis that Joshua was not a full-time student when he passed away because he did not attend classes during the Spring 2005 semester was not arbitrary and capricious.  *See Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992–93 (6th Cir. 2004) (holding that the administrator's denial of pension benefits was not arbitrary and capricious where the plan administrator's interpretation of the phrase "layoff" is supported by the case law and the plan).

Ms. Fuller cites to *Klotz v. Anthem Life Insurance Co.*, 601 So. 2d 593 (Fla. Dist. Ct. App. 1992), and *Nerness v. Christian Fidelity Life Insurance Co.*, 733 So. 2d 146 (La. Ct. App. 1999), and argues that they support interpreting the phrase full-time student as encompassing Joshua.  R. 14, pp. 4–5.  National Union argues that they are distinguishable from the facts of this case.  R. 16, pp. 12–13.  The Court need not address whether these cases truly are distinguishable, for even if they directly conflict with *Margie Bridals* and the cases following it, this divergence on the meaning of full-time student does not render National Union's interpretation arbitrary and capricious.

Under the arbitrary and capricious standard, National Union's interpretation of the Policy only must be rational in light of the plan's provisions, *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456–57 (6th Cir. 2003), or similarly, "a reasonable interpretation of the plan." *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*,

---

plaintiff was not a full-time student, however.  *See id.* at 1043.

203 F.3d 926, 933 (6th Cir. 2000).  Importantly, the mere fact that the courts in *Klotz* and

*Nerness* may have come out differently than *Margie Bridals* and other cases does not make

National Union's interpretation arbitrary and capricious because a reviewing court "must accept a

plan administrator's rational interpretation of a plan even in the face of an equally rational

interpretation offered by the participants."  *Morgan*, 385 F.3d at 992.  Interpreting the phrase full-

time student as requiring attendance during the relevant semester is rational, as demonstrated by

the several cases holding as such.  Even assuming that *Klotz* and *Nerness* offer an equally

rational interpretation of that phrase, therefore, does not compel the Court to reverse National

Union's claim determination.

### B.  Enrolled Versus Attending Classes

National Union argues in its response that it denied Ms. Fuller's claim for life insurance

benefits on the basis that Joshua's failure to attend classes during the Spring 2005 semester

meant that he was not a full-time student at the time of his death.  R. 16, pp. 7, 9.  This

interpretation of the phrase full-time student is supported by the facts (Plaintiff concedes that

Joshua did not attend any classes during the Spring 2005 semester) and by the case law discussed

above.  As such, National Union's denial of benefits based on Joshua's failure to attend any

classes during the Spring 2005 semester was not arbitrary and capricious.

There are also statements in the administrative record, however, suggesting that National

Union concluded that Joshua was not enrolled for the Spring 2005 semester.  For example, the

decision by the ERISA Appeals Committee upholding the denial of benefits stated: "[a]lthough

evidence of surgery and post-op medical records were submitted to explain Joshua's failure to

return to school, no proof was submitted that he was **enrolled** or attending an accredited school

17

or college as a full time student beyond December 16, 2004 through the date when the accident occurred." Adm. R. 100027 (emphasis added). The document entitled "ERISA Appeal Summary," also made this same statement. *Id.* at 100029.

To the extent National Union determined that Joshua was not a full-time student (and therefore denied benefits) on the basis that he was not enrolled, that decision is not supported by the administrative record in light of the September 21, 2005, and November 28, 2005, letters from W. Kay Lauffer, Student Affairs Assistant II at Big Sandy Community & Technical College, to National Union. In these letters, Ms. Lauffer stated that Joshua had "registered/enrolled as a student at the Big Sandy Community & Technical College - Prestonsburg Campus for the following semester(s): Spring 2005 (01-10-2005 to 05-10-2005) - 12 Credit Hours - Full-Time (Joshua enrolled for classes January 5, 2005 during open registration)." *Id.* at 100024, 100065. Even the coverage opinion obtained by National Union stated that Joshua had enrolled for the Spring 2005 semester, apparently relying on Ms. Lauffer's letters. *Id.* at 100047 ("Although he enrolled for classes on a full-time basis for the 2005 Spring Semester on January 5, 2005 during Big Sandy College's open registration period, he never attended any of his classes."). In Ms. Lauffer's November 28 letter, she indicates that the "unfortunate circumstances" led to Joshua's removal/deletion from the Spring 2005 term, presumably referring to his death. *Id.* at 100024. As a result of the removal/deletion, Ms. Lauffer indicated that "everything is wiped out to reflect nothing for this semester, like it never existed." *Id.* While Ms. Lauffer could not locate any documentation substantiating Joshua's enrollment for the Spring 2005 semester, her September 21 and November 28 letters stating that Joshua had registered/enrolled on a full-time basis for the semester would appear proof enough to

18

substantiate this fact.

Even though National Union unreasonably concluded that Joshua was not enrolled for the Spring 2005 semester, that mistake does not render its denial of benefits arbitrary and capricious as long as it denied benefits, at least in part, on the basis that Joshua was not attending classes, which, as explained above, is not arbitrary and capricious. In other words, if National Union based its denial of benefits on two findings, one of which is reasonable and one of which is unreasonable, its denial of benefits should not be considered arbitrary and capricious. *See McCartha v. Nat'l City Corp.*, 419 F.3d 437, 447 (6th Cir. 2005) (upholding administrator's benefits denial where one of two independent reasons provided a reasonable basis for the denial); *Mitchell v. Dialysis Clinic, Inc.*, No. 00-5467, 2001 WL 1006291, at *4 (6th Cir. Aug. 24, 2001) (unpublished) (upholding administrator's benefits denial because one of the two bases relied upon by the administrator supported the decision). Here, National Union argues in its response that it denied benefits to Ms. Fuller based on Joshua's failure to attend class during the Spring 2005 semester. R. 16, pp. 7, 9. The administrative record supports the position that National Union denied benefits, at least in part, on this basis. Adm. R. 100027 ("Although evidence of surgery and post-op medical records were submitted to explain Joshua's failure to return to school, no proof was submitted that he was enrolled or **attending** an accredited school or college as a full time student beyond December 16, 2004 through the date when the accident occurred.") (emphasis added); *id.* at 100029 (same). Thus, National Union's denial of benefits was not arbitrary and capricious even if it unreasonably concluded that Joshua was not enrolled for the Spring 2005 semester.

Moreover, several cases have indicated that intent to attend school is not enough to be

considered a full-time student.  *See Prudential Ins. Co. of America v. Superior Court of Santa Cruz County*, 98 Cal. App. 4th 585, 601 (Cal. Ct. App. 2002) ("A mere intent to return to school is insufficient to qualify a dependent as a full-time student."); *Blue Cross & Blue Shield of Fla., Inc. v. Cassady*, 496 So. 2d 875, 877 (Fla. Dist. Ct. App. 1986) (holding that a dependent who planned on attending college at the time of the accident for which compensation was sought was not a full-time student because "[a]t the time of the injury he was still trying to become a junior college student.  He had not become one."); *Collier v. MD-Individual Practice Ass'n*, 607 A.2d 537, 540 (Md. 1992) ("Dependent children cannot be full-time students if they have withdrawn from the institution, are not attending classes, have not taken examinations, and are not enrolled for upcoming classes, even if there is evidence of an intent to re-enroll.").  Thus, even assuming that National Union had correctly concluded that Joshua had enrolled as a full-time student for the Spring 2005 semester, enrollment would be insufficient to qualify him as a full-time student under the Policy.  Instead, it is a reasonable interpretation of the Policy by National Union to require Joshua to have attended classes to consider him a full-time student.  *See Margie Bridals, Inc. v. Mutual Benefit Life Ins. Co.*, 379 N.E.2d 62, 65 (Ill. App. Ct. 1978) (holding that to be a full-time student requires "a person's enrollment in an academic institution and attendance at classes on a substantial basis.").  Because Joshua did not attend any classes during the Spring 2005 semester, National Union's denial of benefits was not arbitrary and capricious.

## IV.   CONCLUSION

Accordingly, **IT IS ORDERED** as follows**:**

(1)    Defendant's administrative decision denying Plaintiff's application for life insurance benefits is **AFFIRMED**.

(2)     Plaintiff's Motion to Vacate Administrative Decision and Enter Judgment, R. 14, is **DENIED**.

(3)     This matter is **DISMISSED** and **STRICKEN** from the Court's active docket.

(4)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of Defendant.

This the 27th day of May, 2008.

Signed By:

*Amul R. Thapar*  AT

**United States District Judge**

21